

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 3, 2015

**BY HAND and ECF**
The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

  Re: **United States v. Joseph Mosseri**,
     14 Cr. 65 (AKH)

Dear Judge Hellerstein:

  The Government submits this corrected letter in connection with the sentencing of defendant Joseph Mosseri, scheduled for February 5, 2016, at 11:00 a.m. For the reasons set forth below, the Government respectfully submits that the Court should sentence Mosseri within the applicable United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range of 33 to 41 months of imprisonment.

## Indictment and Background on the Mosseri Organization

  On February 3, 2013, a grand jury sitting in this District returned the Indictment, 14 Cr. 65 (the "Indictment"), charging Joseph Mosseri and four co-defendants in multiple counts relating to a scheme to distribute counterfeit handbags and other luxury goods over the internet while representing to purchasers that the goods were authentic. Specifically, all five defendants were charged with: (1) wire fraud, in violation of Title 18, United States Code, Section 1343; (2) conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349; and (3) trademark counterfeiting, in violation of Title 18, United States Code, Section 2320. On February 5, 2014, the Indictment was unsealed and the defendants were arrested.

  As alleged in the Indictment, and as the Government would have proven at trial, from at least in or about 2010 up to and including in or about January 2014, the defendant managed a network of individuals based in Brooklyn, New York who sought to enrich themselves through the operation and management of a network of Internet websites that purported to offer for sale authentic luxury goods that were in fact counterfeit. The websites in question (the "Websites") included, among others: areele.com, besela.com, emilbell.com, ferenzana.com, luxurycatch.com, mysofoxy.com, repandue.com, sorefined.com, viasolace.com, and viloxi.com.

1

Using the Websites, members of the Mosseri Organization advertised and sold luxury fashion and other name-brand items -- primarily handbags -- at prices of up to $3,000. The Websites advertised that the goods offered for sale were authentic and that they were offered at a discount because of manufacturing defects that were, according to one of the Websites, "infrequently noticeable to the consumer." In truth and in fact, however, the members of the Organization either never shipped goods to consumers who ordered them or shipped goods that were verifiably counterfeit.

During the life of the conspiracy, hundreds of consumers who purchased goods from the Websites, including dozens residing in the Southern District of New York, reported to their banks that they failed to receive the merchandise they ordered or that the merchandise received was not as advertised.

In order to prevent the proceeds of their scheme from being eroded by credit card chargebacks initiated by deceived customers, members of the Mosseri Organization defrauded the credit card processors for the Websites. A customer who purchases items using a credit card and fails to receive the promised merchandise is entitled to dispute the charge and obtain a refund from the company that processed the card payment, which then debits (or "charges back") the merchant's bank account. In order to avoid such chargebacks, members of the Mosseri Organization misrepresented the reasons for disputed charges and obstructed efforts by the credit card processors, including at least one processor in Manhattan, New York, to recover disputed funds from accounts controlled by the Organization. In some cases, the amounts owed by the Mosseri Organization due to chargebacks from the Websites exceed hundreds of thousands of dollars.

Joseph Mosseri and, to a lesser extent Eliott Shasho, directed the scheme and were the principal beneficiaries of the money that it generated. The defendant's brother Albert Mosseri participated by permitting the defendant to use his identity and bank information in order to defraud creditors of the Websites. Oded Hakim, a/k/a "Eddie Hakim," permitted the members of the Mosseri Organization to use the credit card terminal for his legitimate business in order to defraud card processors who had noticed the fraud and therefore prohibited the defendant and his co-conspirators from relying on their services. Hakim also worked for a time as a liaison for the Mosseri organization to card processors and was thus intimately familiar with the company and the high rate at which customers complained that the merchandise they purchased was counterfeit. Andrew Li supplied the counterfeit luxury goods that were sold on the Mosseri Organization's Websites, some of which he obtained from a supplier in Manhattan.

Mosseri's Guilty Plea and the PSR

On August 18, 2015, Joseph Mosseri pled guilty before the Honorable Debra C. Freeman, United States Magistrate Judge to Count One of the Indictment, which charges him with wire fraud. The defendant pled guilty pursuant to a plea agreement with the Government (the "Plea Agreement"). The offense of conviction carries a statutory maximum term of imprisonment of twenty years.

Regarding the Guidelines, the parties stipulated in the Plea Agreement that, pursuant to U.S.S.G. § 2B1.1(a), the base offense level is seven.  Moreover, because the parties estimated the loss attributable to the defendant to fall within the range from $1 million to $2.5 million, the parties agreed that a 16-level increase was warranted pursuant to U.S.S.G. § 2B1.1(b)(1)(I).  Because Mosseri was the leader of the Mosseri Organization, the parties agreed that a two-level enhancement applied.  Finally, because of Mosseri's timely guilty plea, the parties agreed that he should receive a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.  Accordingly, the parties agreed that the applicable Guidelines offense level was 22.

Regarding criminal history, the parties stipulated that the defendant has one criminal history point and is in Criminal History Category I.[1]  The parties agreed that the defendant should be assigned one criminal history point under U.S.S.G. § 4A1.1(c) in connection with a July 9, 2001 conviction of driving while impaired, for which he was sentenced to a term of imprisonment of 30 days.  Accordingly, the parties stipulated and agreed that Mosseri's applicable Guidelines sentencing range was 41 to 51 months' imprisonment.

Pursuant to the Plea Agreement, the defendant also consented the entry of forfeiture and restitution orders at the time of sentencing in the amount of $1 million.  The $1 million restitution and forfeiture figure represents a conservative estimate of the portion of the loss suffered by the card processors that can be attributed to Joseph Mosseri in particular, as distinct from the other defendants.[2]

In the Presentence Investigation Report for Mosseri (the "PSR"), the Probation Office largely agrees with the parties' Guidelines analysis.  The PSR notes, however, that since the time of Mosseri's guilty plea, the loss table in U.S.S.G.  fraud guidelines that became effective November 1, 2015.  Under the revised loss scale that appears at U.S.S.G. § 2B1.1(b) has been amended.  Under the version of the Guidelines that went into effect in November 2015, a loss falling between $550,000 and $1.5 million results in an enhancement of 14 points, rather than 16.

---

[1] The plea agreement indicates at one point that the defendant has two criminal history points.  This is a typographical error.

[2] Title 18, United States Code, Section 3664(h) provides, "... the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."  The Government has conservatively calculated the total loss suffered by victims of the Mosseri Organization to be approximately $1.3 million.  As noted, Mosseri's plea agreement requires him to accept responsibility for $1,000,000 of that loss. Because the other defendants in this case have agreed to separate restitution figures that represent the portion of the total loss specifically attributable to them, the proposed order of restitution being submitted to the Court makes Mosseri solely responsible for the $1,000,000 loss amount and apportions that amount between Card Payment Services and Transaction Services based on the portion of the total loss suffered by each of them.  Because the Plea Agreement did not require Mosseri to admit to the trademark infringement portion of the scheme, it also did not require him to make restitution to the luxury goods makers whose goods were counterfeited and sold by the Mosseri organization.

Accordingly, the defendant's total offense level is not 22, as specified in the Plea Agreement, but is instead 20. The change results in a Guidelines sentencing range of 33 to 41 months' imprisonment rather than 41-to-51-month range calculated in the Plea Agreement.

## Discussion

### I. The Appropriate Sentence for Mosseri

A sentence of imprisonment within the range of 33 to 41 months is appropriate for Mosseri. Although the Guidelines no longer play a mandatory role at sentencing, they nevertheless continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." United States v. Booker, 543 U.S. 220, 252 (2005). "Pursuant to the 'remedy opinion' [in Booker], the now advisory Guidelines are to be considered together with the other factors set forth in 18 U.S.C. § 3553(a), by judges fashioning sentences." United States v. Fernandez, 443 F.3d 19, 26 (2d Cir. 2006); see also Booker, 543 U.S. at 261-62. Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," Gall v. United States, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. Id. at 596; see also United States v. Rattoballi, 452 F.3d 127, 133 (2d Cir. 2006) (the Guidelines "'cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a), because they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges.'") (quoting United States v. Jiminez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc)); see also Fernandez, 443 F.3d at 33-34 ("It was not error for the [District Court] to employ the Guidelines range as a starting point and then to determine whether the arguments presented pursuant to the § 3553(a) factors warranted 'lighten[ing]' of . . . or fashioning of 'an alteration to' . . . the advisory Guidelines sentence").

The Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." Fernandez, 443 F.3d at 27; see also Kimbrough v. United States, 128 S. Ct. 558, 574 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'") (quoting Rita v. United States, 127 S. Ct. at 2464-65).

Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

4

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, a particularized consideration of the factors set forth in Section 3553(a) demonstrates that a sentence of 33 to 41 months is appropriate for Mosseri. The nature and circumstances of the offense are particularly relevant here. The defendant perpetrated a massive and highly lucrative scheme to swindle consumers and their credit card processors by marketing counterfeit luxury goods over the internet. The defendant also involved his loved ones in his illegal scheme by, among other things, using their identifying information to open card processing accounts and, in the case of his sister, recruiting her to work for the fraudulent business. This is serious conduct that must be deterred. A sentence of incarceration would serve both to capture the serious nature of the offense and to warn the public more generally that if they defraud consumers and steal from financial institutions they risk not just their financial well-being but also their liberty.

An incarceratory sentence is necessary not just to deter the public in general, but also to deter Mosseri in particular from engaging in conduct of this type in the future. The defendant's flagrant disregard of prior efforts to put an end to his fraudulent handbag business, including efforts by Louis Vuitton to pursue him civilly for trademark infringement, serve to demonstrate that nothing short of a sentence of imprisonment will adequately convey to him the seriousness of his conduct and the consequences that would flow if he were to engage in such conduct in the future.

The history and characteristics of the defendant are also relevant on this point. The defendant was previously convicted in Nassau County of participating in a fraudulent scheme that was not unlike the one at issue in this case. The defendant ultimately received a relatively light sentence for that offense, consisting of 30 days' imprisonment and a period of probation. The fact that the defendant engaged in the instant offense even after the warning shot of the Nassau conviction is a powerful indicator that a more severe sentence is necessary in this case to discourage the defendant from victimizing unwitting consumers in the future.

For these reasons, the Government respectfully requests that the Court sentence Mosseri to a term of imprisonment falling the applicable Guidelines range of 33 to 41 months. Moreover, consistent with the parties' plea agreement, in addition to a term of imprisonment, the Government respectfully requests that the Court enter orders of forfeiture and restitution in the amount of $1 million at the time of sentencing. The Government will submit proposed orders later today.

Thank you for your consideration.

> Respectfully submitted,
>
> PREET BHARARA
> United States Attorney
>
> By: /s/ Scott Hartman
> Scott Hartman
> Assistant United States Attorneys
> Southern District of New York
> (212) 637-2357

cc:   Phillip Weinstein, Esq., *Counsel to Joseph Mosseri* (via ECF)